**Walter Lee ROBERSON, Plaintiff in Error,**

**v.**

**The STATE of Oklahoma, Defendant in Error.**

**No. A–16189.**

Court of Criminal Appeals of Oklahoma.
March 31, 1971.

Rehearing Denied April 14, 1971.

Theodore P. Roberts, Norman, for plaintiff in error.

Larry Derryberry, Atty. Gen., Paul Ferguson, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Justice.

Walter Lee Roberson, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Cleveland County for the offense of Rape in the First Degree; his punishment was fixed at ten years imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

Briefly stated, the evidence at the trial revealed that on March 21, 1970, Ralph Vogus was employed at the Holiday Inn in Norman as a night bellman. He testified that the defendant, whom he had previously known, was registered in the motel in room 160. He observed the defendant, at approximately 2:00 o'clock the following morning, enter rooms 144 and 148. He stayed in room 148 about twenty minutes.

Mrs. Don McGuffin testified that she was employed by the motel in a janitorial

capacity. In the early morning of March 22, 1970, she observed a person, whom she identified as the defendant, enter room 144 and stay about five minutes. He thereafter entered room 148 and remained about twenty or thirty minutes.

Officer Bugher was called to the motel at approximately 3:25 a. m. He observed the victim, Mrs. Smith, who stated that she had been raped. After a conversation with Mrs. Smith, he and Officer Foster proceeded to room 160 and arrested the defendant.

Dr. Haddock examined the victim at the emergency room of the hospital about 4:20 a. m. There was spermatozoa and blood in the vagina. He further observed evidence of trauma to the perineum and the legs.

Officer Foster assisted in arresting the defendant. He observed an expensive camera, a watch, ring, and tie clasp in the defendant's room. The defendant's room key, which was bent, was also seized. A later test revealed that the room key would open room 148.

Detective Cary testified concerning a photograph he made of the defendant's back, and that the defendant's room key would open room 148. On cross-examination he testified that the negative from which the photograph was made, appeared to be scratched. He further testified that when he took the picture of the defendant's back that there were scratch marks on his back.

The testimony of Joe Salyer, taken at a preliminary hearing, was read to the jury, over the objection of the defendant. Salyer testified that he was the night manager of the motel. He observed the defendant, whom he had known previously, coming out of room 144 and then enter room 148. The defendant left room 148 and came into the lobby where he was given some coffee. After the defendant left the lobby, Mrs. Smith called the office and stated that she had been raped.

The victim, a fifty-four year old widow, testified that she was staying in room 148 of the motel. On the night in question she went to bed at 8:30 p. m., after locking the door and wedging a chair in front of the door. She was awakened to find a man sitting on her bed. He said, "I want your money and I want to rape you." (T 107). He ordered her to take off her clothes and he had sexual intercourse. While he was in bed he told her, "you know, I could kill you." She scratched him on the back. Upon completing the intercourse he took her money and left the room. She identified the defendant as the person who perpetrated these acts.

The defendant, a 22 year old, 5' 8", 260 pound Negro, testified in his own behalf that he checked into the motel on March 19, 1970. He went to a party the night in question and returned to the motel at midnight. He talked to Vogus and Salyer in the lobby and went to his room. After watching T.V. he returned to the lobby and had another cup of coffee with Salyer. He returned to his room, watched more T.V., and went after a coke and talked to Salyer in his office. He again returned to his room and went to bed. He was awakened by the officers and placed under arrest. He testified that his skin marks very easily, and that taking his clothes off can cause marks. He denied going into either room 144 or 148 and raping Mrs. Smith. He did not know how the camera or rings got into his room. He admitted a prior conviction for Unauthorized Use of a Motor Vehicle.

■ The first proposition contends that the trial court erred in overruling the defendant's Motion to Suppress the evidence given by Mrs. Smith as to her identification of the defendant. He asserts that a lineup was not conducted and that the first confrontation at the preliminary hearing was considering the "totality of the circumstances" unfair. The defendant does not cite any authority that holds that a defendant is entitled to a lineup prior to preliminary hearing. The exact proposition was decided by the Delaware Court in the

case of Laury v. State, 260 A.2d 907 (1969), in which the Court stated:

" * * * If accepted, the defendants' contention would require a 'line-up' identification in every case as a prerequisite to every court room identification. We know of no such requirement, constitutional or otherwise, and we consider it impractical and unreasonable to create such right. Generally speaking, a court room confrontation, in the presence of Court and counsel and with the right of cross examination preserved, provides adequate protection to the rights of an accused of the type sought to be covered by United States v. Wade. [388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149] * * * * "

In the instant case we observe that the record does not reveal that the defendant ever requested a lineup. The record further discloses that the identification was made from observations at the time of the offense rather than the confrontation at preliminary hearing. We concur with the Delaware Court that a defendant is not automatically entitled to a lineup as a prerequisite to courtroom identification. We observe that because of the peculiar physical characteristics of the defendant, 5′ 8″, 260 pounds, with a goatee, it would have been very doubtful that a fair lineup could have been conducted. We, therefore, find this proposition to be without merit.

■ The second proposition asserts that the trial court erred in permitting the testimony of Joe Salyer taken at the preliminary hearing to be read to the jury for the reason that the defendant did not have the right of cross-examination. We first observe that the State was diligent in attempting to have the witness available for trial. The witness was personally served with a subpoena more than three weeks prior to trial. The trial court issued an attachment for the witness when it was first learned that the witness did not appear. The sheriff's office was unable to execute the attachment or obtain any information as to his present location. We are of the opinion that efforts of the State met the

requirements of showing diligence as set forth by this Court in In Re Bishop, Okl. Cr., 443 P.2d 768 (1968).

Salyer was called by the defendant as a witness at the preliminary hearing. He now objects that he did not have the right of cross-examination. The record of the preliminary hearing reveals that the defendant was given wide latitude in the examination of the witness. There were no objections made to any question propounded by the defendant, nor does it appear that counsel for defense considered the witness a hostile one, thus entitling him at preliminary to even more latitude in eliciting information by leading questions. In view of these facts, and the nature of cumulative testimony, and a complete absence of showing prejudice, we find this proposition to be without merit.

The final proposition contends that the evidence was insufficient to show a crime was committed or that the defendant committed the crime of rape. We have consistently held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts. Jones v. State, Okl.Cr., 468 P.2d 805 (1970).

■ We are of the opinion that the evidence was sufficient to show that the crime of rape was committed, and that the defendant committed the same. The law does not require that a woman do more than her age, strength, the surrounding facts and all attending circumstances make it reasonable for her to do, in order to manifest her opposition.

The record is free of any error which would justify modification or reversal; the evidence overwhelmingly supports the verdict; the punishment is well within the range provided by law; and under such circumstances we are of the opinion that the

judgment and sentence should be, and the same is hereby, affirmed.

The court-appointed attorney, Mr. Ted P. Roberts, who represented the defendant in the trial court and upon appeal, is commended for his diligent and excellent representation of the defendant. His diligence and highly professional representation of the accused undoubtedly resulted in an extremely lenient sentence being imposed. His conduct reflects great credit upon the legal profession.

NIX and BRETT, JJ., concur.