**UNITED STATES of America**

v.

**James Alzie HARDY and Kevin Andrews.**
**Appeal of Kevin ANDREWS.**

**No. 71-1323.**

United States Court of Appeals, Third Circuit.

Argued Oct. 19, 1971.

Decided Nov. 17, 1971.

Louis M. Natali, Jr., Segal, Appel & Natali, Philadelphia, Pa., for appellant.

John F. Penrose, Asst. U. S. Atty., Philadelphia, Pa. (Louis C. Bechtle, U. S. Atty., on the brief), for appellee.

Before ALDISERT, GIBBONS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM:

Appellant Andrews was convicted of bank robbery. 18 U.S.C. § 2113(a) (b) and (d) (1964). He appeals from a maximum sentence of twenty five years under 18 U.S.C. § 4208(b) and (c). The conviction of a co-defendant, Hardy, was affirmed by this court. United States v. Hardy, 448 F.2d 423 (3rd Cir., filed September 15, 1971). Appellant Andrews alleges five grounds for appeal:

(1) That the eye witness identification of the witness Susan Bates was the result of an improperly suggestive pre-trial confrontation and should have been excluded.

(2) That the court ordered the jury, after summation by counsel and before the charge, to examine photographs taken by a hidden bank camera and to compare these photographs, already in evidence, with the defendants.

(3) That the court refused to permit testimony by Andrews' mother to the effect that prior to his arrest he was aware that he was wanted by the police and was seeking the assistance of a lawyer in order to turn himself in.

(4) That the court should have granted a mistrial when Andrews' half sister, a government witness, testified that he had a bad character.

(5) That the court improperly admitted expert opinion evidence that police memoranda containing descriptions of the perpetrators, circulated shortly after the event, are commonly inaccurate.

The pre-trial confrontation between Andrews and Susan Bates took place in a courtroom at a preliminary hearing on suppression, in the presence of Andrews and his attorney, who was aware that Miss Bates would be attending that hearing. Counsel did not request a line-up. Because he was present at the only pre-trial confrontation between Andrews and the witness, counsel was fully prepared to cross examine her as to any weakness in her identification, and he did so. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) require no more.

It was a proper exercise of the district court's discretion to permit the jury to examine photographs, allegedly

those of the hold-up men while the hold up was in progress, while the defendants were present and before the jury retired to deliberate. There is no substance to the contention that because this was done after the end of counsel's summation Andrews was thereby deprived of the effective assistance of counsel. In his summation counsel had in fact referred to the bank camera photographs.

■ Andrews sought to have his mother's testimony about his desire to seek the assistance of a lawyer in order to surrender admitted on the ground that such evidence would show the absence of consciousness of guilt, and thereby rebut government evidence tending to show consciousness of guilt. Assuming that such testimony from Andrews would be relevant, testimony by his mother to that effect was inadmissible hearsay.

■ Andrews' half sister was important in the government's chain of evidence because she linked him to the bank robbery. She was cross examined by his counsel as to her motives in testifying against her half brother in an effort to show her possible bias against him. On redirect, to overcome the suggestion of bias, she was asked what reasons led her to contact the authorities. The answer, largely volunteered, was:

"A. Kevin is a child who has been misled all of his life. He has never known right from wrong at no time.

\* \* \* \* \* \*

"A. He has never known right from wrong. He has been allowed to do what he wants at any age since he could walk and talk. My father hasn't seen Kevin since he was nine years old. He was more or less alone—and I took to him and I cuddled him because he didn't have anybody and at this time when he came to my house I took him because he doesn't have anybody. I don't have anything against Kevin at all.

"Q. In light of that relationship, what was the purpose in your contacting the police and reflected your concern for his welfare?

"A. It had been the same with Kevin. It didn't have to have happened. He could have gotten away with that and he could have gotten away with more things and \* \* \* "

Andrews' counsel thereupon made a motion for a mistrial, which was denied. He did not request a cautionary instruction either at that time or at the end of the case. This was a tactical decision, undoubtedly correct, that an instruction would only emphasize ambiguous testimony which he would prefer that the jury either forget or construe favorably.

It was not error to deny the motion for a mistrial. In the first place the line of questioning on redirect about motivation of the witness was invited by Andrews' cross examination. III A, Wigmore, Evidence § 952 (Chadbourn rev. 1970). Secondly, the answer, though possibly susceptible of the construction that the witness thought Andrews to be of bad character, was not necessarily so intended. It is ambiguous at most. Fairly construed it is a statement that his half sister, ten years his senior, turned him in so as to prevent his being led further into temptation in the future. Thirdly, the trial judge must be afforded a certain amount of latitude in dealing with those inadmissible bits of testimony which, despite the best efforts of court and counsel, are occasionally volunteered from the witness stand. The judge on the scene is best able to observe the impact of the testimony and to decide whether any remedy is appropriate. Here we cannot say the court erred in refusing to grant a mistrial.

■ A detective of the Philadelphia Police Department was asked on cross examination by Andrews' attorney about a "hold-up memorandum" which is prepared immediately after a crime in order to aid in a search for suspects. The hold-up memorandum inaccurately described the height and weight of the robber charged as Andrews. Since identification was an issue the government elicited the testimony that in the opinion of the detective these emergency memoranda commonly did vary from the

actual defendants later apprehended. The witness was qualified to express such an opinion, and its admission under the circumstances was proper. *See* II Wigmore, Evidence §§ 555–56, 1885 (3rd ed. 1940).

The judgment of the district court will be affirmed.