401 A.2d 790

**COMMONWEALTH of Pennsylvania**

v.

**James G. FARRELL, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 6, 1977.

Decided April 12, 1979.

42

John W. Packel, Assistant Public Defender, Chief, Appeals Division, Philadelphia, for appellant.

Michael R. Stiles, Assistant District Attorney, Chief, Appeals Division, Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

Appellant was convicted in a non-jury trial of robbery,[1] impersonating a public servant,[2] criminal conspiracy,[3] and simple assault.[4] The events giving rise to this appeal occurred on December 28, 1975, and are as follows.

On that date the victim, Thaddeus Kirkland, was stopped on the corner of 21st and Redner Streets in Philadelphia by appellant and his accomplice. They falsely identified themselves as police officers and ordered Mr. Kirkland to face

1. 18 Pa.C.S. § 3701.

2. 18 Pa.C.S. § 4912.

3. 18 Pa.C.S. § 903.

4. 18 Pa.C.S. § 2701.

against an adjoining building. Appellant's accomplice frisked the victim, removed $35.00 from his pocket and handed the money to appellant. The two then forced the victim to accompany them to a side street; appellant held a half-gallon wine bottle over Mr. Kirkland's head to ensure compliance with their orders. As Mr. Kirkland was walking with his hands raised, appellant removed his wristwatch. These events were observed by employees of the telephone company who alerted the police. As the police approached, appellant fled, but was apprehended on December 31, 1975. During this incident, Mr. Kirkland suffered a heart attack and was hospitalized for two weeks.

On January 12, 1976, appellant was arraigned at a preliminary hearing before a municipal court judge. Before appellant entered the hearing, his counsel made a request that a lineup be conducted since the victim had not as yet identified appellant in a lineup or by photograph, nor had he given a description of the robbers to the police. Counsel stated that he wished to avoid a tainted identification by having appellant confront the victim in a one-on-one situation at the preliminary hearing. The judge denied the request, and Mr. Kirkland identified appellant at the hearing.

A jury trial was held from March 31 to April 6, 1976, at the conclusion of which appellant was convicted of all charges. He was sentenced to terms from five to fifteen years on the robbery charge, one to two years for impersonating a public officer, five to ten years on the criminal conspiracy charge, and one to two years on the simple assault charge. All sentences were to be served concurrently. After denial of post-trial motions, appellant brought the instant appeal, alleging that the proceedings below were defective in the following respects: (1) the judge at the preliminary hearing erred in denying his request for a lineup prior to the hearing; (2) the court erred in denying appellant's motion to suppress any subsequent in-court identification by the victim as tainted by the alleged suggestive confrontation at the preliminary hearing; and (3) the court erred in not granting appellant's motion for a mistrial based

upon appellant's late entry into the courtroom after trial was scheduled to begin, particularly since the judge had earlier admonished the jurors to be punctual regarding their court appearances. For the reasons stated herein, we find appellant's contentions to be without merit and affirm the judgment in the court below.

I

First, appellant concedes that there is no direct constitutional right to participate in a pre-trial lineup. *Commonwealth v. Evans,* 460 Pa. 313, 333 A.2d 743 (1975). He argues, however, that the principles of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), dictate that the denial of his lineup request amounted to a violation of his due process rights. In *Brady,* the Supreme Court ruled that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment . . . ." *Id.* at 87, 83 S.Ct. at 1196–1197.

In *Commonwealth v. Wilder,* 461 Pa. 597, 337 A.2d 564 (1975), the supreme court found a possible violation of the *Brady* principles when the police refused a defendant's repeated requests to confront the victim of a robbery when the identification was crucial to the defense. This occurred since the victim was severely injured and died twenty-four days later without identifying anyone, and gave only a vague description of the criminals.[5]

In viewing the holding of the supreme court, we find *Wilder* not dispositive of the instant proceeding. The actions of the police in that case violated the principles of *Brady v. Maryland* since they totally prevented the defendant from confronting the victim and testing the identifica-

5. The court did conclude that the denial of the request would have been proper if the victim was mentally or physically incapable of participating in the identification. The case was then remanded to determine whether this had occurred. Upon appeal after remand, the supreme court held that the denial of the requested confrontation was proper based upon an affirmative finding of the above factors. *See Commonwealth v. Wilder,* 469 Pa. 237, 364 A.2d 1357 (1976).

tion by the only witness to the crime. In contrast, the action of the court below did not prevent appellant from testing the victim's recollection of the criminal perpetrators, but instead served only to change the forum in which that testing ultimately occurred. Indeed, appellant's desire to avoid the initial identification at the preliminary hearing because of his assertion that preliminary hearings are per se suggestive has been directly rejected by numerous courts outside this jurisdiction,[6] and by the courts of this Commonwealth by implication.[7] *Cf. Commonwealth v. Cornish,* 471 Pa. 256, 370 A.2d 291 (1977); *Commonwealth v. Jennings,* 446 Pa. 294, 285 A.2d 143 (1971); *Commonwealth v. Tate,* 229 Pa.Super. 202, 323 A.2d 188 (1974) (initial identification occurring in court at time of trial held admissible). Instead, suggestiveness is dependent upon factors occurring during or contemporaneous with the preliminary hearing,[8] and the

6. *See, e. g., Baker v. Hocker,* 496 F.2d 615 (9th Cir. 1974); *United States v. Hardy,* 451 F.2d 905 (3rd Cir. 1971); *United States v. Ryder,* 409 F.2d 1349 (4th Cir.), *cert. denied,* 396 U.S. 865, 90 S.Ct. 142, 24 L.Ed.2d 119 (1969); *Haberstroh v. Montanye,* 362 F.Supp. 838 (W.D. N.Y.1973), *aff'd.,* 493 F.2d 483 (2d Cir. 1974); *Laury v. State,* Del., 260 A.2d 907 (1969); *Roberson v. State,* 483 P.2d 353 (Okl.Cr.1971).

7. To adopt such a per se rule would be to decree that an initial identification may not occur at a preliminary hearing, and would require a lineup or photographic identification in every case as a condition precedent to a preliminary hearing identification. This is not and has never been the law of this Commonwealth. *See* note 10, *infra.*

8. *See Kimbrough v. Cox,* 444 F.2d 8 (4th Cir. 1971) (police display defendant's photograph to victim prior to preliminary hearing, but no others); *cf. Commonwealth v. Fowler,* 466 Pa. 198, 352 A.2d 17 (1976) (lineup identification tainted by repetitive display of defendant's photograph to witness prior to lineup); *Commonwealth v. Lee,* 215 Pa.Super. 240, 257 A.2d 326 (1969), *rev'd. on other grounds, Commonwealth v. Ray,* 455 Pa. 43, 315 A.2d 634 (1974) (witness "guessed" as to identity of robbers in lineup after police indicated they were in vehicle used in robbery despite earlier inability to recognize them).

It should be noted that at the suppression hearing, the only claim of suggestiveness advanced by appellant was that he and his co-defendant had entered the preliminary hearing bound in handcuffs. The Commonwealth presented two witnesses, including Mr. Kirkland, who testified that they had not observed either of the defendants in handcuffs at the preliminary hearing.

48

mere fact that an initial identification occurs in that setting does not conclusively establish that the identification was the result of suggestive influences.[9] We conclude therefore that a criminal defendant does not have an absolute right to participate in a lineup, and such requests are directed to the discretion of the trial courts.[10] Consequently, the court below did not err in denying appellant's request.[11]

9. We also reject appellant's claim that an identification occurring at a preliminary hearing is inadmissible unless the witness participated in a prior identification or gave a prior description so that the court may be assured that the identification did not result from suggestive influences at the preliminary hearing. The absence of such corroborating factors "may go to the weight to be given the [preliminary hearing] identification but does not render it inadmissible." *Commonwealth v. Cornish,* 471 Pa. 256, 261, 370 A.2d 291, 293 (1977); see *Commonwealth v. Tate,* 229 Pa.Super. 202, 323 A.2d 188 (1974).

10. *See Commonwealth v. Evans, supra; Commonwealth v. Sexton,* 246 Pa.Super. 30, 369 A.2d 794 (1977); *Commonwealth v. Garland,* 234 Pa.Super. 241, 339 A.2d 109 (1975). In *Sexton,* Judge Cercone, joined by Judge Hoffman, held *inter alia,* that "upon timely request" a defendant had the right to a lineup prior to participating in a suggestive one-on-one confrontation at a pre-trial hearing. 246 Pa. Super. at 34, 369 A.2d at 796. In his concurring opinion, Judge Van der Voort, joined by Judge Spaeth, agreed that the pre-trial hearing in that case was suggestive, but disagreed that the lineup request had been improperly denied. In this writer's dissenting opinion, joined by then President Judge Watkins and Judge Jacobs, I asserted, *inter alia,* that the *Evans* principle had not been modified and that the right to a lineup was not of constitutional dimensions. Based upon the vote in that case, it cannot be said that this court recognized an absolute right to participate in a lineup.

11. Reviewing the record, although we find no abuse of discretion it is also noted that the court below ruled alternatively that appellant's request had not been timely presented. At the time of the instant proceeding, Pa.R.Crim.P. 304(a) (now amended and adopted as Pa.R. Crim.P. 306(a)) provided that "[a]ll pretrial applications for relief shall be in writing and presented under the name and style of application." Appellant did not adhere to this procedure, but instead made an oral request for a lineup at the commencement of the preliminary hearing. This request was not made until that time despite the fact that appellant had been in custody since December 31, 1975, that the preliminary hearing had originally been scheduled for January 6, 1976, but had been postponed until January 12, 1976, and that appellant failed to advance any reason for not requesting the lineup prior to that date. Moreover, a granting of appellant's request would have required the judge to further postpone the preliminary hearing and the police to quickly muster the resources to conduct a proper lineup. Accordingly, for this additional reason,

## II

Appellant also contends that the in-court identification testimony of Mr. Kirkland was improperly admitted into evidence.

Prior to trial, defense counsel moved to suppress testimony regarding the preliminary hearing identification as well as any subsequent in-court identification by Mr. Kirkland. The assistant district attorney agreed not to utilize the preliminary hearing identification during trial, and that motion was abandoned.[12] The suppression court then conducted an evidentiary hearing regarding the circumstances of the preliminary hearing, found that it was not constitutionally defective,[13] and ruled that any in-court identification would not be "tainted" by the prior identification. *See United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Appellant disputes the findings of the court below, alleges that the preliminary hearing was suggestive and that the subsequent in-court identifications did not arise from an independent source. Without deciding whether the preliminary hearing was unduly suggestive, we determine that the Commonwealth sustained its burden of proving that the in-court identification arose from a source independent of the confrontation at the preliminary hearing.

Given a suggestive out-of-court confrontation, an in-court identification is admissible if considering the "totality of circumstances," *Stovall v. Denno,* 388 U.S. 293, 302, 87

appellant's request was not timely, and the preliminary hearing judge did not abuse his discretion in denying that request.

**12.** At trial, the only testimony regarding the preliminary hearing identification was that which was elicited by appellant's counsel and counsel for appellant's accomplice in their cross-examination of Mr. Kirkland.

**13.** In *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), the Supreme Court ruled that if a confrontation "was so unnecessarily suggestive and conducive to irreparable mistaken identification" it could result in a violation of a defendant's due process rights. *Id.* at 302, 87 S.Ct. at 1972.

S.Ct. 1967, 18 L.Ed.2d 1199 (1967), the subsequent in-court identification arose from an origin "sufficiently distinguishable" from the illegal encounter as "to be purged of the primary taint." *Wong Sun v. United States, supra* 371 U.S. at 488, 83 S.Ct. at 417; *see Commonwealth v. Connolly,* 478 Pa. 117, 385 A.2d 1342 (1978); *Commonwealth v. Taylor,* 472 Pa. 1, 370 A.2d 1197 (1977). Such an independent basis need only be established by the Commonwealth by the introduction of clear and convincing evidence. *Commonwealth v. Connolly, supra; Commonwealth v. Cox,* 466 Pa. 582, 353 A.2d 844 (1976); *Commonwealth v. Fowler,* 466 Pa. 198, 352 A.2d 17 (1976); *Commonwealth v. Diggs,* 260 Pa.Super. 349, 394 A.2d 586 (1978).

In order to determine the existence of this independent basis, the criteria promulgated by our supreme court are as follows:

> " 'the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation and the length of time between the crime and the confrontation.' " *Commonwealth v. Fowler, supra* 466 Pa. at 206, 352 A.2d at 21, *quoting Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

*See also United States v. Wade, supra; Commonwealth v. Taylor, supra; Commonwealth v. Brown,* 462 Pa. 578, 342 A.2d 84 (1975).

■ On the evening of the robbery, Mr. Kirkland was proceeding along 21st Street in the city of Philadelphia when he observed two men at the intersection of 21st Street and Ridge Avenue. He continued up 21st and at the intersection of 21st and Redner Streets was accosted by the two men. The time was approximately 6:30 p. m. and although generally dark at that time, the intersection at 21st and Redner was well illuminated by an overhead street light.[14]

14. At trial, Mr. Kirkland testified that the intersection was illuminated by three lights, and not one light as he had testified at the preliminary hearing. He stated, however, that his prior testimony

Mr. Kirkland was told to "face the wall" and instructed not to look at the criminals. He stated, however, that he observed appellant on two occasions during the robbery and that each occurrence lasted from forty seconds to one minute; the entire affair lasted approximately eight to nine minutes. He further testified that although he suffered a heart attack as a result of the incident, the effects of the attack were not manifested until the very end of the robbery at about the time the police arrived and appellant fled. Finally, Mr. Kirkland asserted both at the preliminary hearing held fifteen days later, and at trial, that his identifications of appellant and his accomplice were based upon his recollections at the time of the criminal episode.[15]

In reviewing the above summary, we find ample evidence in the record at both the preliminary hearing and the suppression hearing to support a finding of independent origin. The victim observed the robbers prior to the robbery and observed appellant for a total of eighty seconds to two minutes at a well lighted intersection during the actual crime. Such short periods of observation have been held sufficient to establish an independent basis for a subsequent identification, particularly when occurring during a criminal episode when the perceptive skills of a victim are particularly acute. *See Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1976) (a few seconds); *Commonwealth v. Shoatz,* 469 Pa. 545, 366 A.2d 1216 (1976) (several seconds); *Commonwealth v. Harvey,* 231 Pa.Super. 86, 331 A.2d 915

regarding one light was based upon his recollection at the time of the robbery, whereas his later testimony was based upon his subsequent visit to the scene of the crime during which he observed three street lights in the immediate vicinity. He stated that his earlier recollection as to one light must therefore have been incorrect.

We reject appellant's assertion that this discrepancy served to discolor the totality of Mr. Kirkland's testimony. Any discrepancies or questions of credibility are for the finder of fact, and were adequately explored by counsel for appellant's accomplice on cross-examination.

15. Mr. Kirkland testified at the suppression hearing that he had been in court prior to the preliminary hearing on January 12, 1976, that he had observed one or two other hearings, and that he recognized appellant as soon as he entered the courtroom. N.T. 35–36.

(1975) (30 to 40 seconds); *Commonwealth v. Pugh,* 226 Pa.Super. 50, 311 A.2d 709 (1973) (prior acquaintance plus "split second" observation). Since an independent basis existed, the testimony was properly admitted.

### III

Appellant's final contention is that the court below erred in denying his motions for mistrial based upon his late entry into the courtroom. On April 2 and April 5, 1976, court was scheduled to begin at 9:30 a. m. On both days the jurors were empaneled and ready to begin at that time. On April 2 appellant and his accomplice were brought into the court at 9:55, and on April 5 they were brought in at 9:35. Their lateness was attributed to the sheriff in whose custody they were entrusted at the time, although this fact was not conveyed to the jury. Appellant claims that his mistrial motions should have been granted since his late arrivals conveyed to the jury the impression that he was "nonchalant" about his own trial. Appellant deems this especially prejudicial in that the court had earlier admonished the jurors to be punctual regarding their court appearances.[16]

In reviewing a mistrial motion on appeal we are initially guided by the rule that trial courts are granted discretionary powers, *see, e. g., Commonwealth v. Craig,* 471 Pa. 310, 370 A.2d 317 (1977); *Commonwealth v. Stoltzfus,*

16. On March 31, 1976, the court below made the following statement to the jury panel:
"I may make a suggestion to you. I don't want to have any unpleasant situations tomorrow where some of you come wandering in here at 10:15 or twenty minutes late or an hour later. Now, I don't want to hold anybody in contempt of court. So if you have got an alarm clock, don't forget to set it. And make sure you have got the right time. And if it is the type that you have to wind, be sure you wind it; but I want all of you to be here at 9:15 tomorrow morning or earlier, but not later. Be here at 9:15 tomorrow morning in this courtroom." (N.T. 67–68).
At the conclusion of the proceedings on April 1, 1976, the court requested that the jurors "[p]lease be here promptly at 9:15, so that we could start at 9:30." (N.T. 210).

462 Pa. 43, 337 A.2d 873 (1975), and their rulings "will not be reversed unless there is a flagrant abuse of discretion." *Commonwealth v. Biancone,* 249 Pa.Super. 34, 37, 375 A.2d 743, 745 (1977). In determining whether to grant the request, the necessary inquiry is whether the alleged occurrence was prejudicial to the defendant, "that is, [whether] it is of such a nature . . . that it may reasonably be said to have deprived the defendant of a fair and impartial trial." *Commonwealth v. Goosby,* 450 Pa. 609, 611, 301 A.2d 673, 674 (1973), *quoting Commonwealth v. Phillips,* 183 Pa.Super. 377, 382, 132 A.2d 733, 736 (1957). Research of Pennsylvania cases has failed to disclose any precedent involving a claim similar to that advanced by appellant. Therefore, our analysis must be resolved based upon an examination of the circumstances surrounding the alleged prejudicial occurrence, giving due deference to the trial court's discretion in determining whether prejudice occurred.

■ Instantly, appellant has cited only one prior occurrence, on March 31, 1976,[17] in which the court below admonished the jurors at length to be punctual regarding their courtroom appearances. This occurrence was two days prior to the incident on April 2 when appellant was twenty-five minutes late, and five days prior to the incident on April 5 when he was five minutes late in entering the courtroom. Reviewing the record, there is no indication of any prejudice accruing to appellant other than his assertion that the jurors may have drawn certain improper conclusions. Upon denial of his mistrial motion, appellant neither requested that the jurors be questioned regarding their impressions of the occurrence, nor that a cautionary instruction be given to dispel any potential prejudice. We therefore conclude that the late entries and the instruction given by the court below, when viewed in the context of the entire trial, were not prejudicial to appellant. The matter of declaring a mistrial laying with the discretion of the court, *see, e. g., Common-*

17. *See* n. 16, *supra.*

*wealth v. Craig, supra; Commonwealth v. Stoltzfus, supra,* we can perceive of no abuse of that discretion.

Judgment of sentence affirmed.

CERCONE, President Judge, concurs in the result.

SPAETH, J., files a concurring opinion.

JACOBS and WATKINS, former President Judges, and HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, concurring:

I concur in the result reached by the majority but am unable to join Part I of its opinion.

I should hold that appellant was not entitled to a lineup because he did not make a timely request for one. *See* Majority at 794, n. 11. Had appellant made a timely request, I should find the case difficult. Judge CERCONE's reasoning in *Commonwealth v. Sexton,* 246 Pa.Super. 30, 369 A.2d 794 (1977), wears very well. I did not join him in *Sexton,* for I concluded that our Supreme Court had not gone so far, and that the lower court had therefore been justified in denying the motion to require a lineup. In an appropriate case I should be willing to reexamine this issue. The majority's reliance on *Commonwealth v. Evans,* 460 Pa. 313, 333 A.2d 743 (1975), is, in my opinion, misplaced. The opinion there does state that "[w]e can find no support in law" for the defendant's argument "that he has a constitutional right to a pre-trial lineup and that the Commonwealth's failure to conduct such a lineup requires a reversal." 460 Pa. at 315–16, 333 A.2d at 745. However, this statement is made without any discussion of the facts, and is unsupported by any citation. It therefore cannot be said that the Court considered whether in certain circumstances, and upon timely request, a defendant might have a right to a pre-trial lineup.