489 A.2d 837

**COMMONWEALTH of Pennsylvania**

v.

**John M. LARKINS, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued May 22, 1984.

Filed March 1, 1985.

Petition for Allowance of Appeal Denied Aug. 15, 1985.

Robert F. Pappano, Assistant Public Defender, Chester, for appellant.

Helen T. Kane, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before DEL SOLE, MONTEMURO and HOFFMAN, JJ.

MONTEMURO, Judge:

Appellant was found guilty by a jury of first degree murder,[1] third degree murder,[2] and possessing an instrument of crime generally.[3] Post-trial motions were timely filed, argued and denied by the trial judge, the Honorable Robert A. Wright, of the Court of Common Pleas of Delaware County.

On December 22, 1982, appellant was sentenced to life imprisonment for his conviction of first degree murder, with concurrent sentences of seven (7) to fourteen (14) years for third degree murder and one (1) to three (3) years for possessing an instrument of crime generally.

Appellant's direct appeal from the judgment of sentence is now before us for review.

The court below has correctly summarized the events leading to appellant's arrest:

> At approximately 4:50 p.m. on May 21, 1980, John Larkins arrived home from work to his house in Upper Providence Township Delaware County, Pennsylvania. He turned on a tape recording device which he had installed on his telephone two days before and he listened to a telephone conversation that had taken place earlier in the day between his wife, Gale Larkins, and Alfred Huweart.
>
> From listening to the tape, Larkins learned that his wife had gone to Len's Place, a bar and restaurant located in Lima, Pennsylvania, to meet Mr. Huweart. Larkins drove to Len's Place with a shotgun in his car, arriving at approximately 5:00 p.m. When he arrived at the bar he circled the parking lot and upon locating his wife and Huweart sitting in Huweart's truck, Larkins parked his vehicle near the truck, and proceeded towards the truck carrying the shotgun. Larkins smashed in the window on the passengers side of the truck with the butt of the gun and pointed the shotgun inside the cab. He fired once, hitting his wife in the lower back. Alfred

---

1. 18 Pa.C.S. § 2502(a).
2. *Id.* § 2502(c).
3. *Id.* § 907(a).

Huweart exited from the truck on the driver's side and Defendant [appellant] went around the truck and shot Huweart twice, once in the arm and once in the back of his leg. John Larkins then returned to his vehicle and drove away.

Police arrived on the scene shortly thereafter and found both victims outside the truck bleeding profusely. Gale Larkins was pronounced dead upon arrival at Riddle Memorial Hospital and Alfred Huweart died on May 27th as a result of the injuries he sustained in the attack.

Following the shooting, Larkins drove to Delaware, where he called a friend and after a series of telephone conversations with different individuals, Larkins and his friend, Nicholas Bradley, discussed the procedure whereby Larkins would surrender to the police in Glassboro, New Jersey, which did occur at approximately 3:00 a.m. on May 22, 1980.

Lower Court Opinion at 3–5.

Appellant sets forth six claims of trial error and one general claim of trial counsel's ineffectiveness, which we shall discuss in *seriatim* fashion.

Appellant's first two claims of error are that the trial court erred in refusing to grant a mistrial where: (1) the prosecutor asked questions concerning the alleged taping by appellant of telephone conversations on occasions prior to the commission of the crime since the prosecutor did not thereafter produce legally competent evidence to substantiate the allegations; and (2) the prosecutor did not present evidence concerning the appellant's relationship with his father.

Preliminarily, it must be said that appellant never denied killing his wife or her alleged paramour; rather his sole defense was that because of a diminished mental capacity, he was unable to form the necessary intent to commit the crime of murder.

In both instances, the challenged questions were directed by the prosecutor, as of cross-examination, to Theodore J. Barry, M.D., appellant's psychiatric witness.

■ There is little question that it is improper for the prosecutor to ask questions which imply the existence of a factual predicate and which attempt to create impressions of guilt through innuendo. *Commonwealth v. Smith*, 457 Pa. 638, 644, 326 A.2d 60, 62 (1974).

■ At the same time, "[t]he test to be applied at motion for mistrial is whether improper evidence was admitted at trial, such as would so compromise the fact-finder that it would be unable to remain impartial, thereby prejudicing appellant beyond a reasonable doubt. *Commonwealth v. Farrell*, 265 Pa.Super. 41, 401 A.2d 790 (1979)." *Commonwealth v. Dean*, 300 Pa.Super. 86, 91, 445 A.2d 1311, 1313 (1982). "The grant or refusal of a motion for a mistrial generally rests within the sound discretion of the trial court and will not be reversed on appeal in the absence of a flagrant abuse of that discretion." *Commonwealth v. Fields*, 317 Pa.Super. 387, 400, 464 A.2d 375, 382 (1983). "In determining whether to grant a request, the necessary inquiry is whether the alleged occurrence was prejudicial to the defendant, 'that is [whether] it is such a nature ... that it may reasonably be said to have deprived the defendant of a fair and impartial trial.'" *Commonwealth v. Farrell*, *supra*, 265 Pa.Super., at 53, 401 A.2d at 796, *quoting Commonwealth v. Phillips*, 183 Pa.Super. 377, 382, 132 A.2d 733, 736 (1957).

■ We have reviewed the challenged questions as well as the answers given thereto by Dr. Barry. In every instance, Dr. Barry's answers were helpful to appellant's theory of diminished mental capacity and therefore we find no prejudice. Furthermore, the trial judge cautioned the jury that the evidence in the case came from witnesses and not from the attorneys; the mere fact that a question is asked is not evidence whatsoever of anything and the only evidence is the answer.

■ We also note that with reference to the prosecutor's reference to a taping of certain conversations over a period of years, the prosecutor was prevented from producing

evidence of the factual predicate because of a ruling by the trial court, and therefore appellant's reliance on the A.B.A. *Standards, Prosecution Function,* 3–5.7(d) (2d ed., 1980) that "[it] is unprofessional conduct for a prosecutor to ask a question which makes the existence of a factual predicate for which a *good faith belief* is *lacking,*" (emphases supplied), is misplaced. Here the prosecutor was at all times acting *with good faith.*

Thus, appellant's first two claims of error are dismissed as being without merit.

Next, appellant claims that the trial judge erred in failing to properly and adequately charge the jury on the doctrine of diminished capacity, and in refusing to give the supplemental charge requested by appellant.

The actual charge to jury was:

Now, as I have told you, the intentional killing required for First Degree Murder is a willful, deliberate and premeditated killing. The killer must make a conscious decision to kill and must have a fully formed intent to kill. In determining whether or not the Defendant [appellant] committed the crime of intentional killing required for First Degree Murder, you should consider the testimony of the expert witnesses as well as all other evidence, which may shed light on what was going on in the Defendant's mind at the time of the alleged killing.

N.T. January 16, 1981 at 1264.

The supplemental charge on diminished capacity, requested and refused by the trial court was:

"1. When a defendant is charged with a crime which requires that a certain specific intent or mental state be established in order to constitute the crime or degree of crime, you must take all the evidence into consideration and determine therefrom, if, at the time when the crime allegedly was committed the defendant was suffering from some abnormal mental or physical condition, however caused, which prevented him from forming the spe-

cific intent or mental state essential to constitute the crime or degree of crime with which he is charged.

If from all the evidence you have reasonable doubt whether Defendant was capable of forming such specific intent or mental state, you must give Defendant the benefit of the doubt and find that he did not have such specific intent.

2. If you find from the evidence that at the time the alleged crime was committed, the Defendant had substantially reduced mental capacity, whether caused by mental defect, intoxication, or any other cause, you must consider what, if any, effect this diminished capacity had upon the Defendant's ability to form any of the specific mental states that are essential elements of murder and voluntary manslaughter.

Thus, if you find that the Defendant's mental capacity was diminished to the extent that you have a reasonable doubt whether he did, maturely and meaningfully, premeditate, deliberate and reflect upon the gravity of his contemplated act, or form an intent to kill, you cannot find him guilty of a willful, deliberate and premeditated murder of the first degree.

Also, if you find that his mental capacity was diminished to the extent that you have a reasonable doubt whether he did harbor malice aforethought, you cannot find him guilty of murder of either the first or second degree.

Further, if you find that his mental capacity was diminished to the extent that he neither harbored malice aforethought nor had an intent to kill at the time the alleged crime was committed, you cannot find him guilty of either murder or voluntary manslaughter.

3. Involuntary manslaughter is the unlawful killing of a human being without malice aforethought and without an intent to kill.

There is not malice aforethought and intent to kill if, by reason of diminished mental capacity caused by mental illness, mental defect, or intoxication the defendant did

not have the mental capacity to harbor malice afore-thought and formulate the intent to kill.

4. The intentional killing required for first degree murder is a willful, deliberate and premeditated killing. The killer must make a conscious decision to kill and must have a fully formed intent to kill. In determining whether or not the Defendant committed the kind of intentional killing required for first degree murder, you should consider the testimony of the expert witnesses as well as all other evidence which may shed light on what was going on in the Defendant's mind at the time of the alleged killing."

Appellant's Supplemental Requested Point for Charge at 1–3.

The charge as given by the trial court was in accordance with the *Pennsylvania Suggested Standard Jury Instruction,* Section 5.01(B) (1978).

 Appellate review of the charge of the court for prejudicial and reversible error requires that the charge be read and considered in its entirety; error will not be predicated upon isolated excerpts. It is the general effect of the charge which controls. *Commonwealth v. Fields, supra; Commonwealth v. Romeri,* 314 Pa.Super. 279, 460 A.2d 1139 (1983); *Commonwealth v. Tolassi,* 489 Pa. 41, 413 A.2d 1003 (1980); *Commonwealth v. Woodward,* 483 Pa. 1, 394 A.2d 508 (1978). A trial court is not required to accept a requested instruction verbatim so long as the court's charge adequately, accurately and clearly explains the principles of law to the jury. *Commonwealth v. Rhem,* 283 Pa.Super. 565, 424 A.2d 1345 (1980).

We first find that appellant's argument on the court's alleged improper jury instruction concerning diminished mental capacity has been waived. At the conclusion of the charge, the court inquired of counsel if there was anything that he had misstated, omitted, distorted or overlooked and if there was anything further which should be said to the jury (N.T. January 16, 1981, at 1246). Whereupon, out of the presence of the jury, defense counsel argued to the

court that his request for a charge on the jury's "mercy-granting" powers which the court properly declined. (*Id.* at 1248–1250). The court granted defense counsel an exception. The prosecutor then said "I have just one question, The concept of the defendant's state of mind. That was covered in the charge, am I correct?" (*Id.* at 1251) The court answered, "I thought it was." (*Id.*). The prosecutor then said, "I thought so too. I just wanted to make sure." (*Id.*). The court said, "All right" (*Id.*), and defense counsel said "Other than that, I have nothing else." (*Id.*).

■ "The reason for requiring specific objection after the charge, even where points for charge had previously been proposed, are apparent. Primarily, it ensures that the court is given the opportunity to avoid error." *Commonwealth v. Martinez*, 475 Pa. 331, 337–38, 380 A.2d 747, 750–51 (1977). Since appellant did not object to the court's charge on diminished mental capacity, indeed he seemed to agree with it, following the trial court's charge, he has waived any objection. Pa.R.Crim.P. 119(b); *Commonwealth v. Brown*, 490 Pa. 560, 570, 417 A.2d 181, 187 (1980); *Commonwealth v. Martinez, supra.*

However, even though this argument has been waived, it nevertheless is without merit.

To say that there was extensive testimony in this case concerning appellant's diminished mental capacity would clearly be an understatement. Appellant's psychiatric witness, Dr. Barry, testified during direct and redirect examination for two hours (N.T. January 13, 1981, at 638–724) and the Commonwealth's psychiatric witness, Dr. Kenneth Kool, also testified at great length on both direct and cross examination (N.T. January 14, 1981, at 979–1066) and again in the Commonwealth's rebuttal. (N.T. January 15, 1981, at 1071–1145).

The defense of diminished mental capacity was first recognized as a defense in *Commonwealth v. Walzack*, 468 Pa. 210, 360 A.2d 914 (1976). Recently, in *Commonwealth*

68

*v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937 (1982), our supreme court stated:

> In *Walzack,* this Court sustained as relevant the admission of certain psychiatric testimony to the effect that a pre-frontal lobotomy negated the required *mens rea* for murder of the first degree, namely, that the actor had formed the specific intent to kill. This Court has quite recently explained that diminished capacity is an extremely limited defense. *Commonwealth v. Weinstein,* 499 Pa. 106, 451 A.2d 1344 (1982) and that *Walzack* stands only for the proposition that 'psychiatric testimony which speaks to the legislatively defined state of mind encompassing a specific intent to kill is admissible.' *Id.,* 499 Pa. at 27–28, 451 A.2d at 1347.

■ Here, the trial court's charge instructed the jury that appellant must have had a *fully informed intent to kill* and in determining whether or not appellant committed the crime of *intentional* killing required for first degree murder, they should consider the testimony of the expert witnesses as well as all the other evidence, which might shed light on *what was going on in the appellant's mind* at the time of the alleged killing.

Appellant's principal point of contention would appear to be that the court did not actually use the words "diminished capacity." We decline to rule that it must. Consequently, our study of the objected to portions of the charge, as well as our reading of the entire charge, including the charge on expert witnesses and hypothetical questions, leads us to the conclusion that the charge, as a whole on the question of diminished capacity, was adequate.

Appellant's fourth claim of trial error is that the trial court erred in failing to charge the jury that it may consider extenuating circumstances pursuant to its mercy dispensing power in determining the degree of guilt; his fifth claim is that the verdict was against the weight of the evidence; and, his final claim of trial error was that the trial court erred in refusing trial counsel's application to become court

appointed counsel or to supply financial assistance for the employment of a psychiatrist.

We have completed a thorough review of the entire record, as well as the briefs of the parties, and conclude that the learned trial judge, Honorable Robert J. Wright, has, in an able and thorough opinion, adequately and correctly ruled upon these fourth, fifth and sixth claims of trial error.

Finally, we are asked to reverse and grant a new trial on the general claim of ineffectiveness of trial counsel.[4]

It is now black letter law, requiring no citation, that counsel will not be deemed ineffective for failing to pursue a meritless claim; that counsel's assistance is deemed constitutionally effective where the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interest; that the test for competency is not whether other alternatives are more reasonable, employing a hindsight evaluation of the record, but whether counsel's assessment of the case and his advice were reasonable; and, finally, in order to be entitled to relief under a theory of ineffective assistance of counsel, it must appear that counsel's action or inaction was prejudicial to the defendant.

In the case *sub judice*, the ineffectiveness claims are as follows:

1. Counsel was ineffective in permitting a juror whose mother had been the victim of a homicide to remain on the panel.

There is no credible evidence in the record to support such an allegation. On the contrary, trial counsel testified that he had consulted with appellant throughout the entire selection process and he did not select any juror over appellant's objection (N.T. March 26, 1982, at 69).

4. The trial court held a hearing on the ineffectiveness claims and heard the testimony of George J. Giunta, Jr., Esquire, trial attorney, Anthony F. List, Esquire, and the appellant John M. Larkins, Jr. Appellant was represented by newly appointed counsel, Robert F. Pappano, Esquire, an assistant public defender.

Appellant presented no evidence that a juror was related to a homicide victim and, since it was appellant's burden to prove ineffectiveness, *Commonwealth v. Shore*, 487 Pa. 534, 410 A.2d 740 (1980), appellant has utterly failed to meet his burden.

2. Counsel failed to discuss with appellant the possibility of guilty pleas.

 However, trial counsel testified that he had not received any offer of a plea agreement from the Commonwealth (N.T. March 26, 1982, at 71). Nevertheless, despite the absence of any offered plea, trial counsel testified that he attempted to prepare appellant in the event a plea agreement was forthcoming by explaining the differences between first and third degree murder. According to trial counsel, appellant wanted his case decided by the jury. (N.T. March 26, 1982, at 72).

There is no merit to this claim.

3. Counsel was ineffective because he was not properly prepared.

 The record, however, indicates that trial counsel spent substantial time in the preparation of this case from time of retention to time of trial. This is especially true in view of the fact that appellant's only defense was diminished mental capacity. Our supreme court has instructed that length of time is but one factor to be considered in evaluating the effectiveness of counsel. *Commonwealth v. Sisco*, 482 Pa. 459, 393 A.2d 1197 (1978). There is no merit to this argument.

4. Counsel was ineffective for permitting appellant to testify without adequately preparing him for said testimony.

 This claim is directly contradicted by trial counsel who testified that he coached appellant by assuming the role of the prosecuting attorney in order to prepare him for cross-examination. (N.T. March 26, 1982, at 83–84). Trial counsel was of the opinion that appellant was fully prepared

to testify. We are convinced that this claim not only lacks merit but is ridiculous as well.

5. Counsel was ineffective for permitting appellant to be examined by the Commonwealth's psychiatrist in the trial judge's chambers in the presence of the assistant district attorney, trial counsel and a sheriff's deputy.

██ However, trial counsel testified that this was a matter of strategy on his part as he was unwilling to divulge to the Commonwealth, until forced to do so, the defense he was planning to utilize. Having waited, for strategic purposes, as long as he could, it reached the point when the Commonwealth was entitled to a psychiatric evaluation and the only time it could be arranged was in the courthouse. Trial counsel requested that he be present which of course necessitated the presence of the assistant district attorney. For obvious reasons, the sheriff's deputy was present. Further, trial counsel testified that the Commonwealth's psychiatrist took down a lot of his comments about appellant's state of mind and that his presence was beneficial to appellant. Trial counsel also testified that the testimony of the Commonwealth's psychiatrist, although not indicated by the final outcome, was beneficial to appellant. (N.T. March 26, 1982, at 80–81).

Clearly, appellant has shown neither ineffectiveness or prejudice.

6. Counsel was ineffective because he failed to examine certain evidence, namely a tape recording and some notes written by the appellant.

██ Trial counsel testified that he did not examine the tape because he believed that it was not admissible and in fact the trial court refused to admit such evidence. Since the tape was not heard by the jury, appellant has failed to demonstrate any prejudice from trial counsel's failure to listen to it prior to trial. With reference to the notes, trial counsel testified that he had, in fact read this material (N.T. March 26, 1982 at 85), and was therefore prepared for its use at trial. We find no ineffectiveness.

7. Counsel was ineffective for failing to object to the court's charge on the defense of diminished mental capacity.

Since we have ruled that the charge was proper, counsel cannot be held ineffective for pursuing a meritless claim.

For all of the above reasons, we affirm the judgment of sentence.

Judgment of Sentence affirmed.