THE STATE OF OHIO *v.* COOPER.

(No. 20744—Decided May 10, 1968.)

Common Pleas Court of Stark County.

*Mr. David D. Dowd, Jr.,* prosecuting attorney, *Mr. Ira G. Turpin* and *Mr. Don M. Benson,* for plaintiff.
*Mr. Ralph W. Ross,* for defendant.

PUTMAN, J. This case, where excellent co-operation among civilians and enforcement agents brought about an arrest, was destroyed by the failure to heed the county prosecuting attorney's repeated plea to call him for advice on legal procedures at any hour.

Until immediately after the arrest was made, the police work was excellent. The post-arrest procedures could have been excellent also had one simple phone call been made to the county prosecutor.

The defendant was convicted of armed robbery. He asks for a new trial, claiming, among other things, that the court should have sustained his motion to strike certain in-court identifications of the accused.

The court agrees and orders a new trial.

There can be no question, nor is it disputed that the victims of the armed robbery charged in the indictment honestly believe in good faith in their own minds and hearts that their courtroom identification of the accused is correct.

The question presented is whether the record in this case shows by clear and convincing evidence and beyond a reasonable doubt that their belief could not have been induced by the police procedures used. (*Gilbert* v. *California* [1967], 388 U. S. 263, 18 L. Ed. 2d 1178.)

The court finds it does not.

Five persons actually saw the robber in some part of his crime. The only one left alone by the police could not and did not identify the defendant in court. The other four were handled by police as follows:

The police—

1. Put all four of them in a cruiser together;

2. told the group they "thought they had the right man" and were taking them out "to identify Mr. Cooper";

3. displayed the accused alone to the four witnesses in the same car together;

4. whereupon the witnesses all asked to have "the hat and glasses put on him," which was done in spite of the fact they were the fruit of an unlawful search of defendant's room without a warrant and not admissible in evidence, and thereafter the witnesses declared they were now certain of their identifications, although not previously according to two of the group;

5. The two victims, Sarno and McBee, were then taken back to police headquarters the same afternoon and each in turn placed in a small room for about 40 minutes facing the accused while they gave detailed statements after having the accused displayed alone to them wearing the hat, glasses and trench coat seized in the unlawful search.

Each one of these five things the police did would, in and of itself, be grossly suggestive and likely to result in mistake. Together their effect is crushing and in this case not a single one of them was at all necessary to accomplish any legitimate police purpose.

Placing all the witnesses together violates basic principles of honest search for the truth as old as the Biblical story of Susannah and the Elders. Sunday School children are familiar with the wicked capacity of this procedure to condemn the innocent. It is a procedure which runs counter to the most elemental precepts of the psychology of suggestion. (*United States* v. *Wade,* 388 U. S. 218, 18 L. Ed. 2d 1149.)

The assurance that the police believe they have the right man, made to the witnesses before they see a suspect, has the effect of inducing the witness to believe that the police possess sufficient independent evidence to secure a conviction of the accused and suggests to the good citizen that he should not "foul up" the police case by expressing any doubt or dissent he may entertain when displayed the suspect.

Showing the group of witnesses only one person is not a procedure designed to protect the innocent or search after the truth but rather an unequivocal attempt to "make" the victims witnesses against the accused irrespective of their recollection.

The spontaneous, unanimous request of all four to see the accused "in the hat and glasses" is at least consistent with some uncertainty remaining in spite of the grossly suggestive procedures employed.

Apart from the circumstantial value of this spontaneous and unanimous request, it was expressly testified that it was not until this was done that there was declared a willingness to put the finger on the accused in court.

Clearly the identification was the direct product of the unlawful search and seizure. (*Mapp* v. *Ohio* [1960], 367 U. S. 643, 6 L. Ed. 2d 1081.) *Wong Sun* v. *United States* [1963], 371 U. S. 471, 9 L. Ed. 2d 441.

The state urges the court to consider that, notwith-

standing the police conduct, the witnesses had an independent means of knowing the robber, having seen him commit his crime unmasked, and unquestionably this is true.

The state further urges the court to consider that it is not the fault of the willing civilian victims of the crime that the police did what they did and that the court ought not to penalize the public by striking the in-court identifications testimony in order merely to "teach the police a lesson." With this, the court agrees.

These practices are not merely "technically" irregular. They are monstrous in their practical capacity to mislead the honest witness and to convict the innocent, and they have the record in such shape that no one can be reasonably certain about the identifications given.

This is not a case of otherwise reliable evidence being excluded by an arbitrary rule calculated to discipline police and control their procedures. Nor is the court saying that the witnesses are not 100 percent honest in their present belief as to the correctness of their identification.

This court finds the evidence has been rendered unpersuasive as a matter of fact because of "brainwashing" given these witnesses.

Two of them stated, when asked by the court, that had the others declared, at the time of the one-man line up, that the accused was not the man then—in that event—they would not have given their testimony that he was. This is about as pure a case of admitting that the identification was the product of the police practices as can be imagined.

However, the key question has nothing to do with the acknowledged honesty of the witnesses or the need of the police for departmental rules which permit them to follow the sound advice this court knows they have had in the past and are now getting from the prosecuting attorney. These matters are irrelevant to the court's responsibility on this record.

The witnesses saw what they saw and the police did what they did. The question is: Does the record make it clear beyond a reasonable doubt that the suggestive con-

duct of the police could not possibly have produced the good faith belief in these witnesses that this accused was the man who robbed them?

The court now finds, upon a careful consideration of the record, that it is impossible to conclude that this record by clear and convincing evidence excludes all reasonable doubt whether the suggestive procedures did in fact induce in these witnesses their honest belief that the accused was the man.

The police testimony is that it is routine procedure to search residences of accused persons in custody without a warrant upon the pretext of a so-called "voluntary waiver" secured from the accused without the advice of counsel.

The evidence shows a departmental policy to deliberately act contrary to the Ohio state search warrant statutes and the now eight-year-old rulings of the United States Supreme Court which declare such procedures unlawful and all the "fruits" of such procedures to be inadmissible including verbal evidence. (*Wong Sun* v. *United States, supra*; *Mapp* v. *Ohio, supra.*)

The search in this case not only violates federal court case rules but also violates Ohio statutes requiring an independent, disinterested, credible witness to be present on police searches to see what is actually taken and to witness the preparation of a correct inventory and the giving of a correct receipt.

These procedures are designed by our local Ohio lawmakers to protect the policeman from false accusations as well as the person searched.

In these times when criminals make false accusations against police as part of a pre-conceived plan to escape conviction, a deliberate police department policy to avoid the presence of or company of a credible, independent, disinterested witness to a search violates that very principle of "support your local police" which is rightly urged upon the public generally and the courts in particular.

This police policy is evidenced by the fact that the mimeographed "Consent to Search" form which is furnished the individual policeman by his superiors over the

long-standing protest of the county prosecutor's office contains no reference to an independent witness, or to an inventory, or to a receipt for goods seized.

This court observes this practice to continue over the county prosecutor's objection.

Support for local police must start in the police department itself.

The identification procedures used in this case are so grossly suggestive and conducive to irreparable mistaken identification that due process of law is totally lacking (*Palmer* v. *Peyton*, 359 F. 2d 199, cited by the U. S. Supreme Court in *Stovall* v. *Denno*, 388 U. S. 293).

This court does not base its ruling upon federal precedent alone. The procedures used in this case not only violate federal constitutional minimums but they are so grossly hostile to basic concepts of reliable fact finding that the court finds, upon a review of all the evidence, that the probative value of the identifications has been destroyed.

The second branch of the motion for a new trial is well taken and so the court does not consider the others.

Motion for new trial sustained.

Motion for judgment of acquittal is overruled.

Defendant prepare entry.