Commonwealth *v.* Lee, Appellant.

Argued June 10, 1969. Before WRIGHT, P. J., WAT-KINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Edward F. Kane,* with him *Bean, DeAngelis, Tredinnick & Giangiulio,* for appellant.

*Richard A. Devlin,* Assistant District Attorney, with him *Paul W. Tressler,* Assistant District Attorney, *Parker H. Wilson,* First Assistant District Attorney, and *Milton O. Moss,* District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., September 12, 1969:

In this appeal, appellant attacks his conviction which was based upon a post-*United States v. Wade,* 388 U.S. 218 (1967), identification by the prosecuting witness.

Appellant was charged with the holdup of a retail store. At trial, the manager of the store testified that two men held him up at 11:30 at night. At 2:00 a.m. the manager was brought to the police station where the police had assembled five persons, four men and a woman in a hearing room. On direct examination the manager stated that the police "asked me if I wanted to identify two of them. So I went in and I wasn't really that sure, you know, about the one guy—Q. Which guy were you not sure of? A. Not this guy (indicating), the other boy, the other fellow who was re-

242

leased. . . . Q. What about (appellant)? A. I definitely identified him. Q. At the police station, when you made that identification was there any doubt in your mind that it could be somebody else? A. No."

On cross-examination, however, the witness was asked to elaborate on the circumstances surrounding the identification.

"A. There were four males and one female altogether . . . I didn't point anyone out the whole time I was in there. I walked around. They told me to go in and walk around and see if I recognized anybody. . . . Q. Isn't it a fact that you walked into that hearing room, looked around, and said to the police officer, 'I can't identify any of these men?' . . . A. Yes, I did say that. Q. You looked at everyone and you said you couldn't identify anybody, is that right? A. Right. . . . Q. You did not identify anybody the first time. You went out of the hearing room. Now, what did you do when you came out of the hearing room? . . . A. The police officer took me over to the car and that was over at Danny's Diner over in Bridgeport. . . . I recognized the car right away (as belonging to the robbers who held up the store). . . . Q. What did (the police) tell you about the car? A. He didn't say the first thing to me, the officer. He just, you know, as soon as we pulled in the parking lot, I said 'That's the car,' and there were about ten cars in the parking lot at the time. . . . Q. Now, you recognized the car, and did the police say anything to you at that time? . . . A. . . . when I went there and I said that is the car, they said, well, this was—they didn't tell me that the boys, that there were actually five people in there. They just said that the five people were picked up because they all got out of that car, allegedly. Q. So the police told you that the five people over in that room had gotten out of that car? A. Right. Q. Then they asked

you if you wanted to go back and try your luck again, right? A. They asked me would I like to go in again. So I said OK, fine. Q. So you went in again. Now what did you do that time? A. Well, (appellant) wasn't sober yet, and the other boy I wasn't really sure of him, you know, but it was supposed to be two boys, so I just guessed and I said those two boys. . . . I mean, it definitely did look like the boy, yet I wouldn't want to prosecute him unless I was really certain it was the man. . . . The more I did look the more they actually did look like the guys that did rob me. . . ."

In summary, the witness testified that three and a half hours after he was robbed, he was unable to identify his assailants when the police exhibited to him four males and one female in a police station hearing room. Immediately thereafter, the police took the witness to view a car which they believed was used by the robbers. The witness identified it. Thereupon the police told the witness that the persons he had viewed were seen in that car before they were apprehended. The witness was then brought back to the hearing room at which time he identified appellant and another person because "it was supposed to be two boys, so I just guessed and I said those two boys," although he was more positive that appellant was involved than the other person identified. The other person identified was subsequently discharged because the witness would not swear to an identification.

These events establish that the witness's identification of appellant violated both *U. S. v. Wade,* supra and *Stovall v. Denno,* 388 U.S. 293 (1967). The identification in question occurred, January 17, 1968, six months after *Wade* had been handed down. Accordingly, the identification procedure, wherein appellant was not advised that he had a right to an attorney and was not presented in a lineup, was improper.

Even were *Wade* not applicable, the identification procedure used was unduly suggestive to the witness. Indeed the witness's testimony that "it was supposed to be two boys, so I just guessed and I said those two boys" aptly characterizes the whole procedure used. As was stated in *Stovall*, a defendant is denied due process if he was identified by means of a confrontation which was conducted in an unnecessarily suggestive manner.

At trial, however, the identification testimony was only objected to on the grounds that "it is so vacillating . . . that the presumption of innocence has not been overcome and the guilt of the defendant not established beyond a reasonable doubt."

In passing upon this claim it must first be noted that the case stands in large part on the identification testimony as this is the only evidence which positively connects appellant with the crime. In the words of the trial judge "it must be conceded (that) the verdicts are largely predicated upon the identification testimony of the store manager." In such light, the identification in the instant case is no different from other identifications which we have held were too speculative to support a guilty verdict.[1] See *Commonwealth*

---

[1] In this regard the court in *Wade* stated: "The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification. Mr. Justice FRANKFURTER once said: 'What is the worth of identification testimony even when uncontradicted? The identification of strangers is proverbially untrustworthy. The hazards of such testimony are established by a formidable number of instances in the records of English and American trials. These instances are recent— not due to the brutalities of ancient criminal procedure.' The Case of Sacco and Vanzetti 30 (1927). A major factor contributing to the high incidence of miscarriage of justice from mistaken identification has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses

*v. Paschall*, 214 Pa. Superior Ct. 474, 257 A. 2d 687 (1969).

In addition, although counsel did not specifically raise the objection, the face of the record glaringly reflects that all of the constitutional protections set forth in *Stovall* and *Wade* were denied.

Under these circumstances, appellant should be granted a new trial.

Judgment of sentence is vacated and a new trial is ordered.[2]

WRIGHT, P. J., and MONTGOMERY, J., would affirm on the opinion of Judge LOWE.

---

for pretrial identification. A commentator has observed that 'the influence of improper suggestion upon identifying witnesses probably accounts for more miscarriages of justice than any other single factor—perhaps it is responsible for more such errors than all other factors combined.' Wall, Eyewitness Identification in Criminal Cases 26. Suggestion can be created intentionally or unintentionally in many subtle ways. And the dangers for the suspect are particularly grave when the witness' opportunity for observation was insubstantial, and thus his susceptibility to suggestion the greatest."

[2] It should also be noted that the lower court failed to charge the jury that the identification testimony should be received with caution. This, of course, is proscribed by *Commonwealth v. Kloiber*, 378 Pa. 412, 424, 106 A. 2d 820 (1954) wherein the court stated that if a witness' identification testimony is weakened by a prior failure to identify or if it is equivocal and qualified after cross-examination, "the court should warn the jury that the testimony as to identity must be received with caution."

Appellant, however, failed to object at trial to the court's failure to warn the jury. We do not, however, reach the question of whether this was fundamental error which can be raised on appeal.