414 A.2d 369

**COMMONWEALTH of Pennsylvania,**

v.

**James CARTER, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 8, 1978.

Filed Nov. 16, 1979.

Petition for Allowance of Appeal Denied May 28, 1980.

510

John W. Packel, Assistant Public Defender, Chief, Appeals Division, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before PRICE, SPAETH and WATKINS, JJ.

PRICE, Judge:

Following a jury trial concluded on October 7, 1976, appellant was convicted of robbery[1] and conspiracy.[2] Post-trial motions were denied, and he was sentenced to consecutive terms of from ten to twenty years imprisonment on the robbery charge, and two and one-half to five years on the conspiracy charge. Appellant now alleges that the trial

1. 18 Pa.C.S. § 3701.

2. 18 Pa.C.S. § 903.

court erred in admitting certain identification testimony and in selectively reviewing the evidence for the jury. We disagree and consequently affirm the judgment of sentence.

Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, the following facts were adduced at trial. At 8:50 on the evening of August 3, 1976, Philadelphia Highway Patrol Officer George Moriarty received a radio call to "investigate two males acting suspiciously on the corner of 22nd and Annin Streets." (N.T.S.H. 8). Together with his partner, Officer Burton, Officer Moriarty proceeded to the area where he observed appellant and another male running east on Annin Street towards the police cruiser. Appellant was carrying a brown paper bag from which what appeared to be a gun barrel protruded. Officer Moriarty exited his vehicle and ordered appellant to stop, at which time the latter dropped the brown bag and, after running a short distance, finally halted. He was then frisked, handcuffed, and placed in the rear seat of the police car.

Officer Moriarty was then informed by another patrolman that a neighborhood bar had just been robbed and that the police radio had described the suspect as wearing blue dungaree pants, blue shirt, sneakers, and carrying a shotgun. Because appellant was similarly clothed (with the inclusion of a blue knit watchcap), Officer Moriarty requested a police wagon which subsequently transported appellant to the "Most Complete Bar" at 22nd and Ellsworth Streets.

At the bar, Robert Sapp, an off duty Philadelphia patrolman who had been a patron at the time of the robbery, was just returning from a fruitless attempt to locate the criminals. As he neared the bar, he could observe appellant being escorted from the police wagon. Once inside the bar, Officer Sapp identified himself to the arresting officers, after which he and the patrons were asked if they recognized appellant. Officer Sapp and others indicated that facial identification was impossible because the robber's face was covered. Officer Sapp noted, however, that both the suspect's build and clothing were identical to that worn by the

robber save for a blue knit cap, which the latter had pulled down over his features. At this point, one of the patrolmen returned to the car, retrieved appellant's cap, and placed it on his head. Officer Sapp then positively identified appellant as the robber. Officer Sapp also identified the brown bag and barrel, which were now being carried by Officer Moriarty, as the object carried by the robber. Herman Casey, the bartender of the establishment, also identified the bag and barrel.[3]

Appellant's first contention centers about the procedure employed by police during the on-the-scene identification. Specifically, he cites the following three factors which allegedly coalesce to render that identification suggestive and to fatally taint the subsequent in-court testimony: the simultaneous presentation of appellant and the weapon purported to be used in the robbery; the act of returning appellant to the bar with a knit cap following an initial presentation without the cap; presenting appellant to the patrons of the bar in a group. We will discuss these points seriatim.

█ Preliminarily, it is well settled that an on-the-scene identification made shortly after the occurrence of the crime does not ipso facto offend a suspect's due process rights. *Commonwealth v. Turner*, 454 Pa. 520, 314 A.2d 496 (1974); *Commonwealth v. Bullock*, 259 Pa.Super. 467, 393 A.2d 921 (1978); *Commonwealth v. Ramsey*, 359 Pa.Super. 240, 393 A.2d 806 (1978); *Commonwealth v. Santiago*, 229 Pa.Super. 74, 323 A.2d 826 (1974). Absent some special element of unfairness, the close proximity in time and place to the actual offense so enhances the reliability of such an identification as to outweigh any possibility of irreparable misiden-

---

**3.** Only Officer Sapp and Mr. Casey were called at trial. At the suppression hearing, Officer Moriarty, when questioned by the court as to how many patrons identified appellant, answered as follows:
    "The off-duty policeman [Sapp] answered that the male fit the physical description, the clothing, the instrument, the mask. The bartender and approximately two other patrons that I recall at that time stated that they recognized the male from the physical features but could not identify him from his face because of the mask being pulled over his face." (N.T.S.H. 30).

tification that might arise from the witness's observance of the suspect in police custody. *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Commonwealth v. Rose*, 483 Pa. 382, 396 A.2d 1221 (1979); *Commonwealth v. Mackey*, 447 Pa. 32, 288 A.2d 778 (1972); *Commonwealth v. Aaron*, 255 Pa.Super. 289, 386 A.2d 1006 (1978). Indeed, a prompt opportunity for identification benefits both parties to the transaction; if an identification proves negative, the suspect may be immediately released and the police may continue their investigation while the leads remain current.

■ As to appellant's first point, the simultaneous display of appellant and the purported weapon did not possess the requisite "unfairness" to taint the proceeding. In *Commonwealth v. Jones*, 231 Pa.Super. 323, 331 A.2d 788 (1974), the defendant was identified in an on-the-scene confrontation by a cashier who had just been robbed. The defendant alleged that the officer had displayed the handgun used in the robbery during the identification, thus rendering the procedure unnecessarily suggestive. Although we rejected this argument on the basis that the gun was not shown until after the identification, we noted that, "even if appellant's contention had been established, it is doubtful if this fact could be considered as a 'special element of unfairness.'" *Commonwealth v. Jones, supra*, 231 Pa.Super. at 326, 331 A.2d at 789. We see nothing in the facts of the instant case to alter our dicta expressed in *Jones* that presentation of the suspect together with the weapon employed is not unduly suggestive.

■ With respect to the cap, appellant's reliance on *Commonwealth v. Lee*, 215 Pa.Super. 240, 257 A.2d 326 (1969), is misplaced. In *Lee*, the manager of a retail store reported that he had been held-up at 11:30 that evening. At 2:00 a. m., he was brought to the police station where a group of five people, including the defendant, had been assembled. The victim was initially unable to positively identify any in the group. Thereafter, the police displayed a car that they believed had been employed in the robbery. After the witness had identified the car, he was told that the suspects

had been seen in the car prior to their apprehension. The witness then returned to the hearing room and identified the defendant and another individual because " 'it was supposed to be two boys, so I just guessed and I said those two boys,' " *Commonwealth v. Lee, supra,* 215 Pa.Super. at 243, 257 A.2d at 328.

The distinction between *Lee* and the instant factual situation is obvious. First, the officers here were merely presenting appellant as he was arrested, that is, wearing the cap. Second, unlike the vacilation exhibited by the witness in *Lee,* Officer Sapp described the actor and the cap in detail. The addition of the cap was necessary because of the inability of the witnesses to view the intruder's facial features. Third, in *Lee* the witness was essentially told by the police, "some of the suspects were driving in this car; thus, if you identify the car as being connected with the crime, some of the suspects must have been the perpetrators." Consequently, when the witness did indeed identify the car, he was in a sense coerced into singling out one or two of the suspects. In the present case, it was at no time intimated to Officer Sapp that because he identified the cap as being worn in the robbery, the owner of the cap would ipso facto be the robber. Quite the contrary, he gave a tentative identification of appellant that hardened into certainty with the addition of the cap. We see no other means by which the police could have assured a more just result.

■ Finally, we disagree with appellant that his presentation to the patrons of the bar en masse constituted, under these facts, a special element of unfairness. Initially, however, we must agree that the practice of presenting a suspect to a group of witnesses in each others company at an on-the-scene identification is fraught with the danger of suggestivity, and we can not approve such a procedure unless absolutely necessary. As was noted by the District of Columbia Court of Appeals in *United States v. Wilson,* 435 F.2d 403, 405 (D.C.Cir.1970):

"If it is feasible for each witness, victim or otherwise, to stand alone when asked to make the identification, aye

[or] nay, this is the course that should be followed. While the benefit of a prompt on-the-scene confrontation makes acceptable the necessary suggestiveness of presentation of a single subject (a 'show-up'), there is ordinarily no need for the additional element of suggestiveness of identification made at the same time by two or more witnesses in each other's company."

*Accord Clemons v. United States*, 408 F.2d 1230 (D.C.Cir. 1968); *United States ex rel. Choice v. Brierley*, 363 F.Supp. 178 (E.D.Pa.1973); *Smith v. State*, 352 A.2d 765 (Del.1976); *State v. Cooper*, 14 Ohio Misc. 173, 43 Ohio Ops.2d 410, 237 N.E.2d 653 (1968). The vagaries of memory are such that the identification, or the intimation of an identification, by one witness could well trigger an automatic procession of identifications, albeit in good faith, by other witnesses in his presence. The result of this domino effect is patently prejudicial. Moreover, even before a first identification is made, the possible conversation among the witnesses as to the suspect's features is fertile ground for spawning the seeds of misidentification. Consequently, we must echo the caveat of *Wilson* and caution that if at all feasible under the circumstances, witnesses at an on-the-scene identification should be allowed to observe the suspect individually.

Nevertheless, the instant showing, although injudicious, does not manifest the type of prejudice inimicable to a suspect's due process rights. No testimony was adduced to demonstrate that Officer Sapp made his identification after either consultation with the other bar patrons, or after other patrons had identified appellant and described the robber. Indeed, although never specifically stated at either trial or the suppression hearing, the evidence points to the conclusion that Officer Sapp was the first to state that appellant wore the same clothes and had the same build as the robber, save only for the robber's use of the cap. In these circumstances, we do not believe the group showing worked to appellant's prejudice.

Appellant next contends that the testimony of the bartender with respect to the bag and pipe was erroneously

introduced because of this same suggestivity at the on-the-scene identification. We need not renew our examination of suggestivity, for we reject the assumption implicit in this argument; namely, that the requirements for a non-prejudicial identification of an individual are similarly necessary for the identification of an object. One of the purposes of invoking such stringent requirements on testimony relating to the identity of the accused is the enormous probative weight of such evidence, ofttimes deciding the issue by its admission alone. Identification of an item of real evidence, however, does not generally have this effect. Consequently, it has never been the case that identification of an object must be subject to the same precautions given the identification of a person. Rather, any uncertainty in the description, or suggestivity in a prior identification, goes to the weight to be accorded the testimony, not its admissibility. *See Buchanan v. State,* 561 P.2d 1197 (Alaska 1977); *People v. Coston,* 576 P.2d 182 (Colo.App.1977); *Klase v. State,* 346 A.2d 160 (Del.1975); *Inge v. Commonwealth,* 217 Va. 360, 228 S.E.2d 563 (1976). Thus, although Mr. Casey testified that there were several patrons between him and the robber with the bag, any chance of misidentification, as well as any possibility of suggestivity in the later showup, go solely to the weight of the evidence, and as such, was solely within the purview of the jury.

Appellant finally argues that the trial judge erred by selectively restating evidence favorable only to the Commonwealth in his charge to the jury. Specifically, appellant contends that the judge ignored the following piece of information. At trial, Officer Sapp described appellant as wearing a white tee shirt beneath an open-collar, blue buttoned shirt at the time of the robbery, and again when he was returned to the bar in custody. Two pieces of evidence entered by the defense were at variance with this testimony; *viz.,* a photograph of appellant shortly after the robbery, and the clothing card composed by a prison agent, both admitted by stipulation, and both indicating that appellant was wearing a *black* polo shirt. The description was otherwise similar.

After a careful review of the charge, we agree that no mention was made of this apparent inconsistency. Apropos of the identification issue, the court charged as follows:

"That one of the two people involved in the holdup was a person who was described as about five foot eight, with blue, with white-and-black sneakers, with blue denim trousers, with a blue shirt, with a blue hat, a knit hat. And that that person was carrying in his hands, I think it was his right, under the right arm as I recall, with the left hand in the front part of it in the back and the right hand further back, was carrying a paper bag. And that at the end of the paper bag there protruded a barrel or a pipe which most of the people thought was a shotgun, was the barrel of a shotgun. And two people who were there present said, give that kind of description, give that kind of description of the person, one of the two people who committed the crime.

.    .    .    .    .

There has been great argument made to you on both sides as to what the significance of that kind of information was. I think counsel for the defendant said certainly a lot of people wear blue denims, and obviously, Members of the Jury, if that's all this case were about, the person who committed the crime had blue denims and the man who was arrested had blue denims, this case would not even be submitted. I would decide as a matter of law that was insufficient.

Similarly, it may be possible for two people wearing a knit hat. Of course you will have to consider the time of the year and the weather conditions and the like to make that kind of determination. But what the Commonwealth says to you is that it's not just the blue denim, it's not just the blue shirt, it's not just the blue knit hat, it's the fact that all three of those present, plus the fact the man they arrested, the defendant here, was also carrying a paper bag in which was ultimately found was a simulated-type weapon to resemble a shotgun. And when this man is brought back to the scene, both of the witnesses who have

testified said that that man fit all the elements that they observed during the holdup.

Now, they obviously could not identify him and say that's the man, I saw his face; they couldn't see his face. But they made their identification based on what they did observe, blue denims, the socks and all the rest of it. So, Members of the Jury, it seems to me the issue you have got to decide is are you convinced beyond a reasonable doubt the holdup man, Mr. Carter, are one and the same persons, or are you not so convinced. If you are convinced beyond a reasonable doubt that he is, then it's your—it seems to me it follows logically that you should find him guilty of the crimes." (N.T. 356–59).

It is, of course, true that a trial judge should neither express an opinion on evidence that fatally colors the minds of the jurors against the defendant's cause, *Commonwealth v. McNeill*, 462 Pa. 438, 341 A.2d 463 (1975); *Commonwealth v. Crawford*, 452 Pa. 326, 305 A.2d 893 (1973), nor so review the evidence as to deprecate or minimize the effect of that offered by the defense. *Commonwealth v. Colandro*, 231 Pa. 343, 80 A. 571 (1911). The instant case presents neither of these situations. While the court failed to mention the discrepancy, it neither gave the jury its opinion on innocence or guilt, nor removed any evidence from its consideration. It clearly and unequivocally instructed the jury that they were the exclusive finders of fact. (N.T. 341, 355), and they were to be governed by their recollection of the facts (N.T. 344–45). This was sufficient to compensate for any failure in reciting every piece of defense testimony. *See Commonwealth v. Simmons*, 482 Pa. 496, 394 A.2d 431, 439 (1978); *Commonwealth v. Bederka*, 459 Pa. 653, 659–60, 331 A.2d 181, 184 (1975); *Commonwealth v. Mathis*, 227 Pa.Super. 464, 466 n. 1, 324 A.2d 407, 408 n. 1 (1974).

The judgment of sentence is therefore affirmed.

SPAETH, J., concurs in the result.