J. S34033/20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| SHAKUR D. GANNAWAY, | : | No. 1000 MDA 2019 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered August 4, 2010,
in the Court of Common Pleas of Berks County
Criminal Division at No. CP-06-CR-0003906-2009

BEFORE: PANELLA, P.J., BENDER, P.J.E. AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED NOVEMBER 09, 2020**

Shakur D. Gannaway appeals from the August 4, 2010 judgment of sentence, entered in the Court of Common Pleas of Berks County, after a jury convicted him of robbery, theft, receiving stolen property, terroristic threats, conspiracy to commit robbery, conspiracy to commit theft, conspiracy to commit receiving stolen property, and conspiracy to commit terroristic threats.[1] Appellant was sentenced to an aggregate term of 15 to 30 years' incarceration. After careful review, we affirm the judgment of sentence.

The trial court summarized the facts of this case as follows:

> On May 25, 2009, at approximately 1:15 a.m., Peter Manicioto was working as a cashier at the Lukoil mini-market at 315 Penn Avenue, West Reading, Pennsylvanian [sic], when he witnessed two

---

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 3921(a), 3925(a), 2706(a)(1), and four violations of 18 Pa.C.S.A. § 903(a)(1), respectively.

individuals enter the store together. The first individual, later identified as Rashad Bair, was wearing a red[ ]shirt and a wig that had shoulder length hair. The second individual, later identified as appellant, was wearing a camouflage shirt and camouflage hat with a black wig. They were carrying a black plastic bag. Both men approached the cashier counter, and appellant told Bair "do it, do it." Bair then pulled out a gun from the black plastic bag and said "it's a stick-up." Manicioto placed the cash drawer on the counter and gave them the cash drawer. At that time, Manicioto did not know whether the gun was real or fake and feared getting shot. Appellant then took the money from the cash drawer and placed it in the black bag. Manicioto testified that around $150 was stolen, and that the cash drawer did not contain any twenty-dollar bills. During the commission of the crime, Manicioto stared at the two men. The two men then fled the store. Once they left the Lukoil mini-market, Manicioto pushed a silent alarm and called the police. The West Reading Police arrived approximately thirty seconds after Manicioto pushed the silent alarm, and he told them what had occurred.

On the night of May 25, 2009, Oswald Herbert resided at 314 Reading Avenue, West Reading, Pennsylvania, a corner property half a block from the Lukoil mini-market. At approximately 1:15 a.m., Herbert saw a pair of individuals running at a high rate past his window on 4th Avenue towards Reading Avenue, meaning they were running away from the nearby Lukoil mini-market. After they crossed Reading Avenue, they got into a black SUV which then sped off. Herbert went to the Lukoil and learned that it had been robbed. While walking towards the Lukoil, he found a camouflage hat on the ground which he later gave to the police. He also reported what he saw to the police.

On May 25, 2009, at approximately 1:20 a.m., Officer Christopher Dinger of the Reading Police Department received a report about a robbery that had occurred at the Lukoil in West Reading, and a lookout call went out for a black SUV that had just fled the scene of the

crime. At the time, Officer Dinger was on patrol in Reading. Around fifteen seconds after he heard the dispatch, he observed a black Ford Explorer (a[n] SUV) traveling away from West Reading at a high rate of speed. Officer Dinger traveled behind the Ford Explorer, which started to increase its speed and ran through stop signs and red lights without stopping. Officer Dinger activated his emergency lights and siren, but the Ford Explorer continued to flee, only stopping when it crashed into two parked cars after about ten to twelve blocks of pursuit. At that moment, Officer Dinger witnessed the driver and the front seat passenger exit the vehicle and flee the scene. Officer Dinger gave chase on foot and apprehended the front seat passenger, Kemar Williams.

Officer Justin Uczynski of the Reading Police Department assisted Officer Dinger in his vehicle pursuit of the black Ford Explorer. Officer Uczynski observed the vehicle crash into two park[ed] cars and a passenger exiting the Ford Explorer and fleeing on foot. Officer Uczynski apprehended that person, whom he identified at trial as appellant. At the time of appellant's apprehension by Officer Uczynski, appellant was wearing a camouflage t-shirt. Officer Uczynski searched appellant, and found various amounts of currency on him, a total of $158 in one, five, and ten dollar bills. Significantly, appellant did not have any twenty[-]dollar bills.

Officer Nick Karetas of the West Reading Police Department was on patrol on May 25, 2009. At 1:18 a.m., he was dispatched to the Lukoil mini-market on Penn Avenue. Officer Karetas was only two blocks away from the Lukoil when he received the call, so he arrived at the Lukoil within seconds after receiving the report of the robbery. Officer Karetas spoke to Manicioto, the clerk, and Mr. Herbert, the neighbor, and learned that two men robbed the store and then were seen running from the Lukoil and getting into a black SUV. Officer Karetas broadcasted this information to other officers within a minute or two of arriving at the Lukoil. Sometime later, Officer Karetas received a request from the

> Reading Police Department to take Manicioto into the city to see if Manicioto could identify the two persons the police had in custody. At the first location . . . the police had Kemar Williams in custody, who Manicioto was not able to identify. However, at the second location a few blocks away from the first location, the police had appellant in custody, who Manicioto identified as one of the persons who robbed the Lukoil. Officer Karetas later obtained a search warrant for the black Ford Explorer, wherein he found a black wig.

Trial court Rule 1925(a) opinion, 2/19/20 at 6-8 (citations to the record, footnotes, and extraneous capitalization omitted).

Procedurally, as noted by the trial court, "[a]ppellant filed a series of documents before trial[,] challenging [Manicioto's] show-up identification [of appellant]." (*Id.* at 11.) On April 9, 2010, after a hearing, the trial court denied appellant's motion to suppress. The case proceeded to trial by jury. On May 26, 2010, the jury convicted appellant of the aforementioned offenses. Appellant was sentenced on August 4, 2010.

For our purposes, the relevant procedural history begins with the reinstatement of appellant's post-sentence and direct appeal rights on January 14, 2019.

> [T]he [trial] court appointed Christopher Connard, Esquire, as counsel for appellant. Attorney Connard filed post-sentence motions on February 26, 2019.[2] A hearing was held on appellant's post-sentence motions on April 11, 2019. Following this hearing, the [trial] court denied appellant's post-sentence motions on June 11, 2019.

---

[2] The certified record reflects that on February 8, 2019, Attorney Connard filed a post-sentence motion on appellant's behalf. On February 26, 2019, he filed an amended post-sentence motion.

Attorney Connard filed a [timely] appeal from appellant's August 4, 2010 judgment of sentence on behalf of appellant and, on June 25, 2019, the [trial] court ordered Attorney Connard to file a concise statement. However, before Attorney Connard filed a concise statement, he filed a petition to withdraw on August 28, 2019, because communications between Attorney Connard and appellant had broken down. A hearing on Attorney Connard's petition to withdraw was held on November 18, 2019, and the [trial] court granted Attorney Connard's petition to withdraw on that day. On December 12, 2019, the Court appointed David Long, Esquire, as counsel for appellant. However, on December 17, 2019, Attorney Long filed a motion to withdraw as counsel. The [trial] court granted Attorney Long's motion to withdraw as counsel and appointed John Fielding, Esquire, as new counsel for appellant on December 18, 2019. Attorney Fielding filed a concise statement on January 21, 2020.[3]

*Id.* at 4-5. The trial court filed its Rule 1925(a) opinion on February 19, 2020.

Appellant raises the following issues for our review:

[1.] Whether the court failed to suppress and/or exclude the questionable identification of the appellant because appellant was forced to

---

[3] On December 18, 2019, appellant's present counsel was appointed and granted 30 days to file a Rule 1925(b) concise statement of errors complained of on appeal. "A failure to comply with such direction may be considered by the [a]ppellate court as a waiver of all objections to the [o]rder, rule, or other matters complained of." (Trial court order, 12/18/19.) The 30th day was January 17, 2020. Appellant's Rule 1925(b) statement was filed on January 21, 2020, and was, therefore, untimely. Nevertheless, because the trial court addressed the issues raised by appellant in its Rule 1925(a) opinion, we will overlook the untimeliness of appellant's concise statement and address the merits of the issues contained therein. ***See Commonwealth v. Thompson***, 39 A.2d 335, 340 (Pa.Super. 2012) (holding when counsel files untimely Rule 1925(b) statement and trial court addresses issues we need not remand and may address the merits of the issues presented).

participate in a "show-up"[4] in which the alleged victim identified the appellant as being involved in the alleged crime under circumstances under which the identifications were made were inherently suggestive and that at that time the identifications were made, the appellant was clearly in police custody and handcuffed, all in violation of appellant's rights under the United States and Pennsylvania Constitutions?

[2.]   Whether the court should have granted a new trial because the verdict was against the sufficiency and/or the weight of the evidence?

Appellant's brief at 6 (bolding and full capitalization omitted).[5]

Appellant argues that the suppression court erred in denying his suppression motion where the out-of-court identification procedure was unduly suggestive because, when Manicioto identified appellant, the police "had [a]ppellant in custody, in handcuffs[,] and [appellant] had been identified by the police as a suspect." (Appellant's brief at 16 (quotation marks omitted).)  For the following reasons, we disagree.

---

[4] A "show-up" is a one-on-one confrontation between the victim and a single suspect. (*See McElrath v. Commonwealth*, 592 A.2d 740, 742-743 (Pa.Super. 1991); *Commonwealth v. Carter*, 414 A.2d 369, 372 (Pa.Super. 1979).

[5] We note that the trial court reinstated appellant's post-sentence motion and direct appeal rights *nunc pro tunc* on January 14, 2019.  Counsel timely filed a post-sentence motion on February 8, 2019.  The run-date for purposes of Pa.R.Crim.P. 720(B)(3)(a) was June 10, 2019, 120 days from the filing of appellant's post-sentence motion. (*See* 1 Pa.C.S.A. § 1908.)  Appellant's post-sentence motion was denied by the trial court on June 11, 2020, after the 120-day time limitation expired.  However, because appellant filed his appeal on June 20, 2019, well within the 30-day time limit to appeal from a post-sentence motion that is denied by operation of law, we have jurisdiction to entertain this appeal. (*See* Pa.R.Crim.P. 720(A)(2)(b).)

Our standard of review when addressing a challenge to a trial court's denial of a suppression motion is well settled.

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous.

*Commonwealth v. Jones*, 121 A.3d 524, 526 (Pa.Super. 2015) (citation omitted; brackets in original), *appeal denied*, 135 A.3d 584 (Pa. 2016). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Luczki*, 212 A.3d 530, 542 (Pa.Super. 2019) (citation omitted). Further,

> [i]n reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable. The purpose of a "one on one" identification is to enhance reliability by reducing the time elapsed after the commission of the crime. Suggestiveness in the identification process is but one factor to be considered in determining the admissibility of such evidence and will not warrant exclusion absent other factors. As this Court has explained, the following factors are to be considered in determining the propriety of admitting identification evidence: the

opportunity of the witness to view the perpetrator at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the perpetrator, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation. The corrupting effect of the suggestive identification, if any, must be weighed against these factors. Absent some special element of unfairness, a prompt "one on one" identification is not so suggestive as to give rise to an irreparable likelihood of misidentification.

*Commonwealth v. Kearney*, 92 A.3d 51, 65 (Pa.Super. 2014) (citation omitted), *appeal denied*, 101 A.3d 102 (Pa. 2014); *see also* *Commonwealth v. Hale*, 85 A.3d 570, 575 (Pa.Super. 2014) (finding fact that defendant was handcuffed and police indicated that they wanted victim to see if she could identify defendant were not facts that gave rise to an impermissibly suggestive identification), *affirmed*, 128 A.3d 781 (Pa. 2015); *Commonwealth v. Moye*, 836 A.2d 973, 976 (Pa.Super.2003) (affirming conviction based on victim's one-on-one crime-scene identification of defendant viewed alone in police van, wearing handcuffs, where police said they had someone for victim to identify and had found him running down the street sweaty and tired), *appeal denied,* 851 A.2d 142 (Pa. 2004).

Applying the factors to be considered in determining the propriety of admitting identification evidence, the trial court found that:

Manicioto had a clear opportunity to witness appellant because appellant stood in front of him up-close at the time of the crime and Manicioto had an unobstructed opportunity to view appellant's face at that time; Manicioto had a high degree of attention at that time because he was held at gunpoint and feared for his

life; Manicioto provided an accurate description of what appellant looked like and what he was wearing at the time of the crime to the police; Manicioto was able to clearly identify appellant at the "show-up" identification; and, significantly, only around five minutes had passed since the time of the crime and when the identification was made.

While Manicioto saw appellant in handcuffs[6] and in police custody when he identified appellant, our Superior Court has consistently held that the fact that an appellant was in handcuffs and in police custody at the time the identification was made is not a "special element of unfairness" that makes the identification so suggestive as to give rise to an irreparable likelihood of misconduct.

Trial court Rule 1925(a) opinion, 2/19/20 at 12 (extraneous capitalization omitted). **See also** notes of testimony, 4/9/10 at 93-95.[7]

---

[6] We note that the trial court acknowledged there was conflicting testimony as to whether appellant was in handcuffs at the time of the identification. "Because Manicioto testified that he viewed appellant in handcuffs, and because the court, in its findings of fact, stated that appellant was in handcuffs at the time of identification, the court will consider appellant to have been in handcuffs at the time the identification was made."  (Rule 1925(a) opinion, 2/19/20 at 12 n.12 (extraneous capitalization omitted).)

[7] Additionally, the suppression court made findings of fact and further found that:

Mr. Manicioto testified that no one in any way persuaded him or suggested to him to identify the defendant, and he testified that the fact that the defendant was in handcuffs and apparently or obviously in police custody, those facts did not in any way influence his identification or recognition of the defendant.  Rather, he was simply able to recognize the defendant's facial features.

Notes of testimony, 4/9/10 at 94-95.

After a thorough review of the record, we concur with the trial court's analysis. The trial court's factual findings are supported by the record and its legal conclusions drawn from those facts are correct. Appellant has failed to demonstrate that Manicioto's out-of-court identification was unreliable or that the procedure was impermissibly suggestive.[8]

Appellant's second issue combines two separate issues; *i.e.*, whether "the verdict was against the sufficiency and/or weight of the evidence." (Appellant's brief at 6.) Appellant asserts the same argument in support of both claims. Specifically, appellant maintains that because "the prejudicial and unduly suggestive identification of the [a]ppellant, combined with the trial court's failure to give a *Kloiber* instruction, is the central issue in the case," that the evidence was insufficient as a matter of law and against the weight of the evidence. (*Id.* at 23-24, 25-26.)

Claims challenging the weight of the evidence and sufficiency of the evidence differ.

---

[8] With regard to his identification issue, appellant also asserts that the trial court failed to give a *Kloiber* instruction to the jury. (Appellant's brief at 18, 21-22; *see Commonwealth v. Kloiber*, 106 A.2d 820, 826 (1954) (holding that where identification of defendant is doubtful, court should warn jury that identification testimony must be received with caution).) Having found that the identification was not unduly suggestive, this issue is moot. Further, appellant does not allege that trial counsel requested a *Kloiber* instruction. Thus, to the extent that appellant is challenging the trial court's failure to give the instruction, the issue is waived as it cannot be raised for the first time on direct appeal. *See Commonwealth v. Cousar*, 928 A.2d 1025, 1043 (Pa. 2007); Pa.R.A.P. 302. The *Kloiber* instruction issue is also waived because appellant failed to raise the issue in either his Rule 1925(b) statement or his statement of questions presented.

> [A] challenge to the weight of the evidence is distinct from a challenge to the sufficiency of the evidence in that the former concedes that the Commonwealth has produced sufficient evidence of each element of the crime, but questions which evidence is to be believed.

***Commonwealth v. Richard***, 150 A.3d 504, 516 (Pa.Super. 2016) (citation and quotation marks omitted).

A reading of appellant's arguments, in support of his challenges, and a review of his testimony at trial reveals that appellant is, in essence, challenging the credibility of the Commonwealth's witnesses while attempting to bolster his own. Appellant does not dispute the general facts of the case.[9] Rather, appellant contends he was not one of the participants in the robbery but, rather, an innocent passenger in the vehicle used in the robbery. (***See*** notes of testimony, 5/26/10 at 264-267, 270, 273, 287-288.) Such an argument goes to the weight, not the sufficiency, of the evidence.[10] ***See Commonwealth v. Smyser***, 105 A.3d 912, 916 (Pa.Super. 2018) (noting credibility determinations made by finder-of-fact and challenges go to the weight, not the sufficiency of the evidence); ***Commonwealth v. W.H.M., Jr.***, 932 A.2d 155, 160 (Pa.Super. 2007) (finding claim that jury should have

---

[9] Appellant's recitation of the factual history of the case is a reiteration of the facts set forth in the trial court's Rule 1925(a) opinion and quoted herein. (***See*** appellant's brief at 12-17.)

[10] Even had appellant raised a proper sufficiency of the evidence claim, the trial court's Rule 1925(a) opinion thoroughly addresses the sufficiency of the evidence regarding each offense of which appellant was convicted, and found that the Commonwealth had proven every element beyond a reasonable doubt. (***See*** trial court Rule 1925(a) opinion, 2/19/20 at 13-24.) We concur.

believed appellant's version of event rather than victim's goes to weight, not sufficiency of evidence). Accordingly, we construe appellant's argument as a weight claim.

In reviewing the trial court's exercise of discretion in ruling on the weight claim, we review "the underlying question of whether the verdict was against the weight of the evidence." *Commonwealth v. Trippett*, 932 A.2d 188, 189 (Pa.Super. 2007) (citation omitted). It is not our role, as a reviewing court, to reweigh the evidence and substitute our judgment for that of the fact-finder. *See Commonwealth v. Mitchell*, 902 A.2d 430, 449 (Pa. 2006). Further, "[r]esolving contradictory testimony and questions of credibility are matters for the factfinder." *Commonwealth v. Mikitiuk*, 213 A.3d 290, 305 (Pa.Super. 2019) (citation omitted). "The essence of appellate review for a weight claim [lies] in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion." *Commonwealth v. Clay*, 64 A.3d 1049, 1054 (Pa. 2013) (citations and quotations omitted). To warrant a new trial on weight of the evidence grounds, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Mucci*, 143 A.3d 399, 411 (Pa.Super. 2016) (citation omitted), *appeal denied*, 168 A.3d 1252 (Pa. 2017).

In his brief, appellant invites this court to do nothing more than assess the credibility of the Commonwealth's witnesses and reweigh the evidence in

an attempt to convince us to reach a different result than the jury reached; to-wit, that he was not involved in the robbery and was the victim of an impermissibly suggestive identification. We decline appellant's invitation. The jury, as fact-finder, had the duty to determine the credibility of the testimony and evidence presented at trial. Appellate courts cannot and do not substitute their judgment for that of the fact-finder. Here, the trial court did not abuse its discretion in concluding that "in light of all the evidence at trial which identifie[d] [a]ppellant as one of the men who entered and robbed the Lukoil mini-market, the jury's verdict on all counts does not shock the [trial c]ourt's sense of justice." (Trial court Rule 1925(a) opinion, 2/19/20 at 24.) Appellant's weight of the evidence claim is, therefore, without merit.

Insofar as the verdict was based on reason and not conjecture, we find no ground for granting appellant's motion for a new trial.

Judgment of sentence affirmed. Appellant's application for substitution of appointed counsel is denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/09/2020

- 13 -